KATHERINE T. SMITH and Her Husband, RUPERT SMITH, v. CITY OF ARCADIA, a Municipal Corporation.

2 So. (2nd) 725

En Banc

Opinion Filed May 30, 1941

*M. A. Rosin,* for Petitioners;

*Leitner & Leitner,* for Respondent.

BJFORD, J.—On petition for writ of certiorari under Rule 34 we review order of the Circuit Court denying motion to dismiss bill of complaint. The bill of complaint was based upon the theory that one who acquired title by purchase at sale under decree of foreclosure of lien by the municipality for unpaid delinquent municipal taxes became a tenant in common with one who thereafter acquired tax deed duly issued and based upon tax sale certificate for delinquent State and county taxes which state and county taxes were delinquent at and before the time of the foreclosure.

The complainants sought partition of the lands identically described in the Master's Deed under foreclosure and in the tax deed.

The bill of complaint avers, and the motion to dismiss admits, that taxes on the involved lot were assessed by the City of Arcadia for the years 1925 to 1937, both inclusive, and that during the year 1938 the City of Arcadia filed suit to foreclose its liens for such taxes so assessed. That the City of Arcadia prosecuted its suit to final decree and in 1939 under decree of foreclosure bought in the said lands and took master's deed conveying the same to the City of Arcadia.

The record also shows that the same property was assessed for State and county taxes for the years 1936 to 1940, both inclusive, and that on the 5th day of August, 1940, Katherine T. Smith, having acquired the State and county tax sale certificates, and having caused advertisement for tax deed to have been duly made, acquired a tax deed from the State of Florida conveying the said lands to her.

Complainant prayed partition of the lands *pro tanto* between the parties in proportion to the amounts paid by each for the respective deeds.

The chancellor held that the parties were tenants in common and made an order denying the motion to dismiss the bill of complaint.

If the bill of complaint contains any equity it is upon the theory that the City of Arcadia and Katherine T. Smith are tenants in common.

It appears that such theory is untenable, because the title claimed by each party is a new and independent title and each is adverse to the other. The City of Arcadia claims title under a foreclosure suit wherein the municipal lien for taxes was foreclosed and in which suit the lien for State and county taxes was not involved and was not foreclosed or in anywise affected. Katherine T. Smith claims a new and independent title by a tax deed issued by the State of Florida in what we have termed a statutory foreclosure of the lien accruing by reason of the non-payment of State and county taxes. See Cremin v. Quigley, 104 Fla. 133, 139 Sou. 383. The lien for unpaid delinquent municipal taxes and the lien for unpaid delinquent State and county taxes were of equal dignity when both liens existed, but when one of the liens was extinguished and a new and independent title accrued under the master's deed, there then remained but one of the liens which had therefore existed and that remaining lien, not having been an inferior lien, then became a paramount lien. This does not involve the doctrine of a merger of a lesser estate into a greater estate but involves the extinguishment of one lien leaving another of equal dignity in full force and effect.

The fact that the City of Arcadia became the purchaser of the land under foreclosure of its tax liens is of no moment. The City of Arcadia is in the same position with the same legal rights and remedies as would have been enjoyed by any other person or corporation, had it been the purchaser at that foreclosure sale, and has no additional rights. In the City of Bradenton v. Northern Investment Corp., 121 Fla. 470, 164 Sou. 136, we held

"The law is settled that the tax lien of the City of Bradenton was extinguished when it foreclosed and took title to the property after final judgment and sale, that said title was free of the city lien for the reason that it was merged in the final decree of judgment. No liens remained outstanding against it except the liens of persons or corporations not made parties to the suit. After final decree and sale, the City having purchased the property, was on the same footing that any other purchaser would have been. City of Bradenton v. Lee, *supra;* 15 R. C. L. 782; 23 Cyc. 1110 and 1118."

So when the City of Arcadia took title under the foreclosure of the municipal tax lien it took that title subject to the lien then existing in behalf of the State and county for delinquent taxes therefore accruing and evidenced by the tax certificates then outstanding and upon which the deed to Katherine T. Smith thereafter was issued. That lien continued to exist until it was extinguished by the issuance of the tax deed to Katherine T. Smith.

In Ridgeway v. Reese, 100 Fla. 1304, 131 Sou. 136, we said: "Tax sale certificates are not 'grants' made by the State or by the executive department of the State government. Such certificates evidence the ex-

istence of liens for unpaid taxes that are past due. The statute creates a lien upon lands for taxes assessed thereon, and the certificate gives a right to a conveyance of the land unless the certificate is duly redeemed by paying the taxes due with interest, costs and charges. Sections 985, 1003, Comp. Gen. Laws, Section 9, Chapter 14572. The lien evidenced by a tax sale certificate may be enforced as provided by law. One statutory remedy to individuals holding tax certificates is the issuing in the name of the State of a deed conveying the land to the certificate holder, upon due notice to the owner, if the certificate purchased at the tax sale or from the State is not redeemed. The State does not own the land except through the tax sale and does not purport to convey it except as a means of enforcing the sovereign right to collect the taxes duly levied on the land."

In the case of City of Sanford v. Dial, 104 Fla. 1, 142 Sou. 233, we said:

"If a municipality having liens for taxes and special assessments on lands, is not made a party in a suit to foreclose State and county tax liens on the land, so that the municipal liens may be adjudicated in the suit, a sale of the land under the foreclosure proceedings will be subject to such municipal tax and special assessment liens. See Lee v. Walter-Keogh, Inc., decided at this term."

A corollary of this is that if the holder of State and county tax sale certificates, and thereby being the owner and holder of the liens evidenced by such certficates on lands, is not made a party in a suit to foreclose a municipal tax lien on the land so that the State and county and municipal liens may be adjudicated in the suit a sale of the land under the fore-

closure proceedings will be subject to the delinquent State and county tax assessment liens.

In Stuart v. Stephanus, *et al.,* 94 Fla. 1087, 114 Sou. 767, we said:

"Generally speaking, the person asserting such a tax title need go no further than his tax deed. The deed is the inception of that title and is *prima facie* evidence thereof. Brown v. Castellaw, 33 Fla. 204, 14 South. Rep. 822. If the tax deed is valid, the former title can neither assist nor prejudice the tax title. The tax grantee takes a complete and perfect title by another right—by a new independent and paramount grant."

"If complainant's tax deed is valid, the former record title is extinguished and terminated by operation of law. It therefore constitutes no cloud, either actual or apparent, upon complainant's tax title, which fact appears from the public records themselves, without the aid of a decree in equity."

In Clermont-Minneola Country Club, Inc., v. Coupland, *et al.,* 106 Fla. 111, 143 Sou. 133, we said:

"There can be no question that under Section 894 and 896, Compiled Gen. Laws, 1927, taxes lawfully imposed upon real property creates a lien thereon superior to all others and remains in full force and effect until discharged."

In Dean v. Kane, 106 Fla. 814, 143 Sou. 656, we said:

"The law of this State is that a tax title has nothing to do with the previous chain of title and is not in any way connected with it, but that it is the breaking up of all previous titles and extinguishes and destroys all other titles and ordinary liens and consequently the issuance of a *valid* tax deed creates in the pur-

chaser a new and original title entirely disconnected with that of the former owner, going back no further than the tax sale and not encumbered with any previous lien or collateral interests subordinate to the dignity of the tax lien as fixed by the statute in relation to other liens and collateral interests."

This was reaffirmed in Hetch, *et al.,* v. Wilson, 107 Fla. 421, 144 Sou. 886.

In Security Land & Investment Co. v. Ranger Realty Co., 115 Fla. 641, 156 Sou. 23, we held:

"If there are other outstanding State, county or city tax certificates against the property involved in this case, which certificates have not been brought into these proceedings and adjudicated, the only legal effect of their omission from the proceedings is that complainant in this case makes the foreclosure decree subject to the lien of such other certificate which will not be affected by the decree in this case."

And in Allison Realty Co. v. Graves Investment Co., 115 Fla. 48, 155 Sou. 745, we said:

"Whatever may be the rule in other States, whether based on peculiar provisions of statutes or upon principles of law developed and applied by the courts, the statutes in Florida contemplate that all liens for State, county and municipal governmental taxes, whether the liens are severally for taxes of the same year or for different years, shall be first liens of equal dignity and legal force and effect without priorities as between such first liens upon the property taxed; and that such first liens for State, county and municipal taxes shall continue in full force and effect until legally discharged by payment, redemption, cancellation, or as otherwise duly provided by law, such as by sale in foreclosure proceedings or by other legal processes."

And also:

"If any holders of tax or other liens upon the lands are not made parties to the foreclosure proceedings, they are not bound by the decree rendered in this cause. The State cannot be sued, so all tax liens held by the State must be satisfied before a tax deed is issued or before final foreclosure decree; otherwise the tax deed cannot lawfully be issued, and if issued, would be subject to 'unpaid taxes' (Sec. 12, Chap. 14572); and a foreclosure deed is 'indefeasible' only against the parties defendant in the foreclosure proceedings. Sec. 28, Chap. 14572."

It is seen, therefore, that in this jurisdiction it is well established that if in foreclosure proceedings instituted to foreclose tax liens some tax liens are included in the foreclosure and others are left out and are not adjudicated, the foreclosure decree will not affect the liens not adjudicated and the purchaser under the foreclosure decree takes a new and independent title but one which is subject to the liens existing and not adjudicatd which are of equal dignity to those tax liens which were adjudicated.

It is also well settled, as shown by authorities herein before cited, that when the municipality becomes the purchaser at a foreclosure sale in proceedings instituted by the municipality it takes a new and independent title based on the decree of foreclosure with no different rights than those which would have obtained as to a stranger to the suit, had such stranger been purchaser at the foreclosure sale and have taken such title.

In the instant case the municipality foreclosed its tax liens with knowledge that there was then outstanding liens of equal dignity for delinquent State and

county taxes. When the municipality bought in the land and took title under foreclosure sale it had the same right that any other purchaser at such sale would have had to redeem the lands from the then outstanding lien for delinquent State and county taxes. That lien for State and county taxes continued to exist until the tax deed was issued in due course to a purchaser under those certificates.

The complainant in the bill of complaint recognizes the validity of a State and county tax deed. It is therefore admitted that the deed was issued after due notice to the owner which at the time was the municipality, and that the municipality did not exercise its right to come in and redeem the lands from the existing then paramount lien. There is no difference in law in the situation existing here and that which would have existed had the holder of the State and county tax sale certificates gone into court and foreclosed those certificates making the municipality, the then owner of the land, party defendant to the foreclosure proceeding and in which proceeding the municipal party defendant had interposed no defense. The municipality had its day in court and the advantage of due process of law when the notice of application for tax deed was published. It failed to avail itself of the opportunity either to contest the validity of the State and county tax sale certificates or to redeem its land from the lien of such certificates.

Respondent relies on the case of Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293, and cases there cited, to support its contention that the involved lot is now held by the parties as tenants in common.

We cannot follow the conclusion reached by the Minnesota Court because it is based on a hypothesis which does not obtain here. There the court said:

"It is sufficient to say that all purchasers at sales are, after the time of redemption, vested with the absolute title to the property. The city as such purchaser, stands in the same position as a private person. It acquires the same rights and occupies no superior position. 2 Cooley, Taxation (3rd Ed.) 978; Conn. Ins. Co. v. Wood, 115 Mich. 444, 74 N. W. 656; Dyke v. Whyte, 17 Colo. 296, 29 Pac. 128. The title acquired by the city accrued on the 8th day of November, 1907, the time of redemption having expired on that day. The forfeited tax sale under which plaintiff acquired title was had on November 25, 1907, or 17 days after the title of the city had become absolute on the failure of the owner to redeem. Plaintiff's title became absolute on February 20, 1908, and was in fact founded upon a tax lien of equal rank with the lien made the foundation of defendant's title. Under the statute referred to, the perfection of title under the assessment did not bar or extinguish the State's lien. The statute so expressly provides. Such being the situation, it is clear that the State was within its rights when it proceeded subsequently to the date when title became vested in the city under the assessment lien to sell the property in the forfeited tax proceeding. It is equally clear since the perfection of title in the city was without prejudice to the rights of the State, that the forfeited sale vested in the purchaser, after the expiration of the time for redemption, title to the property.

"Plaintiff, as such purchaser, either acquired title, or he acquired nothing at all. He could not redeem from the city assesment sale, for the time of redemption therefrom had expired at the date of his purchase at the forfeited sale. And even if the case had been

one where he could have redeemed from the city, the law does not impose that as a condition to the completion of the title under his purchase."

Here, however, the title which was vested in the city was not *absolute* but under our law was subject to *defeasance* by the enforcement of the then existing liens for State and county taxes and under the law it became and was the duty of the purchaser of the new and independent title at the city foreclosure sale, to redeem from the State and county tax liens. If the defendant in the court below petitioner here, had acquired her tax deed prior to the foreclosure of the city's lien, she would have taken title burdened with the city's lien. Under such condition she would have been required to redeem from the city's lien or else have her title extinguished by the city's foreclosure of it thereafter instituted foreclosure proceedings to enforce its lien. See Bice v. City of Haines City, *et al.*, 142 Fla. 371, 195 Sou. 919, wherein we held:

"Taxes should not be assessed by municipality against tax delinquent lands which have under the statute become vested in State without right of redemption, unless otherwise provided by law, but lands sold by the State are subject to unpaid municipal tax liens acquired before lands became vested in State, and are also subject to authorized taxation after conveyance by State to private parties."

"The vesting in the State of the fee-simple title to lands described in tax sale certificates held by State extinguished all private contracts or statutory non-taxation liens, such as mortgages or mechanics' or materialmen's liens."

"The statute vesting in State fee-simple title of all lands that have been certificated to State for non-

payment of taxes for more than two years prior to
its passage is not unconstitutional as violating tax lien
property rights of city, and contract rights of holders
of municipal bonds, since statute does not destroy
municipal tax liens which may be enforced as provided
by law."

In the case of Certain Lands upon which Taxes
and/or Special Assessments are Delinquent v. City of
Sebastian, 129 Fla. 233, 176 Sou. 121, the municipal
corporation filed bill of complaint under the provisions
of Chapter 15038, Acts of 1931, against Certain Lands
to enforce payment of delinquent taxes and delin-
quent special assessments. Defendants Sloan filed an
answer in which they alleged in effect that the de-
fendant Mattie Mae Sloan was the owner of the lands
involved and that the defendant obtained title to said
property by virtue of a State and county tax deed
issued on June 1, 1936, based on the tax certificate
dated September 4, 1933, and alleged that the title of
the defendant Mattie Mae Sloan under such tax deed
is superior to all claim, right, title and interest which
the complainant municipality has to the property. On
motion, the paragraph, as amended, was stricken as
constituting no defense. On appeal we affirmed the
lower court and held:

"In proceedings by municipality to enforce payment
of delinquent taxes and delinquent special assessments
against the land, answer of claimant setting up title
obtained through a State and county tax deed *held*
insufficient to allege a defense."

The rationale of this opinion and judgment is that
the defendant Sloan took her tax deed and title there-
under subject to the municipal tax liens and that the
right of the complainant to enforce the municipal tax

liens by foreclosure was not affected by Sloan's tax deed.

For us to hold otherwise than is herein indicated would be to' upset the law in regard to tax titles and existing tax liens as it has been established by statutes and opinions and judgments of this Court for many years past.

If any hardship appears to have been worked it is because the city failed to exercise its rights under the law by redeeming from the lien of State and county taxes after it became vested with defeasible title and before the defeasance occurred by the acquisition of tax deed.

For the reasons stated, the writ of certiorari is granted; the order of the circuit court is quashed and the cause remanded with directions that the bill of complaint be dismissed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, J. J., concur.